The candidate for argument is Columbian Financial v. Bowman Thank you, Your Honor. You're welcome. Save cattles. Good morning, Your Honors, and may it please the Court. You'll need to get closer to the mic. My name is Matthew Lamole. I'm here today on behalf of the appellant Columbian Financial Corporation. Columbian filed a Section 1983 lawsuit against the Kansas State Bank Commissioner, alleging that the Commissioner violated its constitutional due process rights by seizing its bank without ever giving it a fair and meaningful opportunity to contest the seizure. And the question before the Court today is whether that 1983 suit is precluded by the very same state proceeding that Columbian alleges failed to meet constitutional due process requirements. Columbian submits that for several reasons, the answer to that question is no, and so we ask this Court to reverse the District Court's entry of summary judgment for the Commissioner. The first reason I'd like to talk about why Columbian's suit should not be precluded falls from this Court's holding in Scroggins. We briefed that case extensively, and what Scroggins held was that a state proceeding, even if it's followed by judicial review, that does not give a fair opportunity for the petitioner to make constitutional arguments. Well, in Scroggins, isn't the assumption there that the state proceeding did not include the claim that was later sought in federal court? Yes, Your Honor, the Court did not find that the petitioner in Scroggins had an adequate opportunity to make their constitutional claim, although I think the opinion reflected that the constitutional elements of the claim in Scroggins, it was a racial discrimination claim. The petitioner did attempt to assert that claim throughout the state proceeding. It's just that it wasn't ever the focus of what the state proceeding was looking at, and that's one of the similarities that Scroggins shares with this case. One dissimilarity, and that's a pretty big dissimilarity, isn't it? I mean, I don't know why Scroggins would be relevant if, in fact, in this proceeding, the issues that you tried to raise here, in fact, were front and center, were they not? No, Your Honor, I disagree. I'm sorry if you misheard me say dissimilarity. I said that that is a similarity that this case shares with Scroggins. And how so? Well, you can look at it in terms of what happened at each level, both in Scroggins and in this case. And in both cases, at the administrative level, what was going on had nothing to do with the procedural constitutional issues that are being litigated here. In the Columbian State Proceeding, it was really about looking at whether the bank was insolvent under the Kansas State. And you're saying in that initial proceeding that there was never an utterance of the phrase due process. I can't say, Your Honor, that there was never an uttering of the phrase due process. Is there a particular point in the proceeding that you believe that issue was raised? Was due process raised? Okay, well, due process was raised... In the judicial review action brought in state court. The judicial review action, the second judicial review petition that was filed after... The first one. The first one. Okay, so the first one, at that point, Columbian had received no hearing at all, so it filed a petition for judicial review, making it substantive points that the bank was not insolvent and also stating, well, look, the bank was seized and we haven't received any hearing at all, so to comply with due process, we need a hearing. And a hearing was provided... And, and, and, and... The state court ruling on that case, Judge Tice said, looks to me like this is a due process problem. We're going to remand to the banking commissioner and you all should have a post-deprivation hearing. Correct. So you're still telling me that due process was never an issue before in this case? What Columbian hasn't had a fair opportunity to argue in the state proceeding was that that hearing that was given before the OSBC still failed to meet constitutional standards because, among other reasons, Columbian was not allowed to discover the most important evidence to contesting the seizure. Didn't you have a second petition for review? Correct, Your Honor. Did you raise due process in that second petition for review here? So what happened in the second petition for judicial review is when the petition was filed in the district court, there were two due process claims raised. There was a procedural claim and there was the fair notice argument. The district court dismissed that second petition for review, finding it to be moot. So that's a dismissal for a lack of subject matter jurisdiction, and that type of dismissal never carries conclusive effect. And it was reversed, that finding, that conclusion. Correct, Your Honor. It was found to be wrong. That finding was reversed when Columbian continued its judicial review process before the Kansas Court of Appeals. Before the Kansas Court of Appeals, Columbian did continue to press its fair notice argument. And due process. I don't believe it was the argument that Columbian was, by not having fair notice of how the statute was going to be interpreted, that denied it fair process. Well, what distinction do you make between fair notice and due process? There's the argument of whether Columbian ever had a meaningful opportunity to contest the seizure in terms of due process. Right, that's what I refer to as our procedural due process claim that's set out in count one of the 1983 suit. In count two of the 1983 suit, there's also a fair notice argument. And how that argument goes is that the Kansas statute that defines when a bank is insolvent, it says that a bank is insolvent when it fails to meet a creditor's demand in the ordinary course of business. And for over 100 years, that statute had been interpreted to mean that a creditor actually had to come to the bank and demand its money and not get it, and that's when the bank is insolvent. But it's undisputed that that's not what happened here. What happened here is that the commissioner interpreted the statute for the first time in Kansas history to mean that the commissioner could project insolvency into the future and determine that the bank was going to become insolvent in about two weeks or so, and then declare the bank to be insolvent and seize it on that basis. And so since Columbian was never given notice that that is how the statute was going to be interpreted until the bank was seized, Columbian argued that the lack of fair notice violated its due process rights. All right, well, I guess the point is you're raising fair notice in your 1983 action now, right? Yes, Your Honor. Okay, in the second round-up in the state appeals, you raised fair notice. Yes, Your Honor. Okay, you had an opportunity, and this is the critical point, to raise a due process claim in that second proceeding, and whether you did or not becomes irrelevant, doesn't it? We're talking about a claim for collusion, which means it's not whether you just could, what you did is what you could. I respectfully disagree, Your Honor. I understand that that is often how a claim for collusion is applied. But what Scroggin tells us is that when there isn't a fair opportunity, when the court does not fairly consider the due process claim, then preclusion does not need to be applied. And I'd like to make two further points on that. I'll read you exactly what the Kansas Court of Appeals said in response to Columbian's fair notice argument. The court said, Finally, Columbian argues that anything less than a requirement of insolvency, in fact, violates due process. But the commissioner did find the bank to be insolvent, so this argument fails to provide Columbian relief from the commissioner's decision. And we respectfully submit that that simply does not address at all the dichotomy between what the statute says in terms of needing a creditor's demand to be rejected to be insolvent versus how the law was applied in terms of projecting insolvency into some future date, making certain assumptions. The second point I'd like to make on that, Your Honor, is that in Kansas, claim preclusion is an equitable doctrine. The Supreme Court of Kansas said in K&V J. Cox, that's a case we cite in our brief, that the doctrine is equitable, that it requires a flexible and common-sense construction, and that it's a doctrine grounded in fundamental fairness. That's how claim preclusion is to be applied in Kansas. And this court is applying Kansas law when it determines whether or not preclusion should apply. So we submit that the portion I just read to you of the Kansas Court of Appeals opinion, that is not a fundamentally fair resolution of Columbian's very serious complaint that this insolvency statute was applied in a totally different way than it had ever been applied in the hundred years past. Well, if this action by the banking commissioner was that nuclear and different and odd, you sought review with the Kansas Supreme Court, and they denied it. And then did you seek cert? To the U.S. Supreme Court, I do not believe so, Your Honor, although I was not involved in that briefing. So aren't we done on that issue? Your Honor, again, I would say that Stroggin says we are not, because the... Well, it seems to me really what you're arguing is that you somehow have a special right to pursue your due process claim in federal court, even though you pursued your due process claim in state court. I don't believe that's what we're arguing for, Your Honor. I simply believe it's a matter that, under these circumstances, the due process claims were never given a fair hearing in state court for various reasons, including the fact that many of the facts that comprise the due process claim occurred during the course of the state proceedings, given the fact that the state proceedings occurred in a somewhat haphazard fashion, because the OSBC's original position was that Columbian was not entitled to any sort of hearing at all. It's a very unusual case, and Stroggin's is an unusual case as well, and these cases... Well, I appreciate that you're saying things were happening all along and the case was moving very slowly in various places, but once you have a determination by the district court and the state appellate court on your question of due process, how can you seek, again, the same issue in federal court? Your Honor, I'd simply say again that, as in Stroggin's, the issue was pressed before the district court and before the Kansas Court of Appeals, but the court found that it wasn't given a fair hearing. I would also... I'm sorry, Your Honor. I'd also simply draw a distinction between the fair notice claim, which was raised before the Kansas Court of Appeals, and the more procedural claim that simply alleges the hearing the OSBC gave was not fair. That's not a claim that was decided by the Kansas Court of Appeals, and that's not an issue that was right to be decided before the Kansas Court of Appeals because the state proceedings were still unfolding and it was yet to be seen the full range of process that Columbian would receive. Well, by then, you'd had the hearing before the banking commissioner. You'd appealed to the state district court. So what more was yet to happen so that you would know the context of the claim? Well, Your Honor, simply that in Hort, in the case that we cite in our brief, it goes over the principle that the process the state provides is not only that employed by the board agency or other governmental entity, but also includes the remedial process state courts would provide if asked. So it's our position that under that case, as well as under the McKinney case that says a due process injury does not occur unless and until the state refuses to make a means available to remedy the deprivation, as well as this, of course, holding in Pender where the court said a plaintiff filed a section 1983 deprivation suit. The court said, no, you have to go back and look at all the process the state is going to give you until you can come to our court and make this claim. The same circumstances, Columbians' claim would not have been fully ripe until it fully explored the process that the Kansas Court of Appeals was going to offer. So you're indicating that judicial review is part of the determination of whether a matter is fully ripe, whether there's been an ultimate decision on your case? And they're reviewing whether you got fair procedure. How did they become part of the determination of whether you got fair procedure? Your Honor, they really weren't looking at the question of whether we got fair procedure. Well, that's what you brought before them. You brought fair notice, and you had an opportunity to raise due process. So why couldn't they be doing that? Well, Your Honor, I already went over what happened with the fair notice claim and how it really wasn't addressed by the court. And again, in terms of arguing that the entire procedures were not fair, I don't believe that claim would have been ripe under this court's decision in Pender. Pender, you had a question whether you exhausted available state remedies. Right. You exhausted available state remedies here. Well, the state remedies weren't fully exhausted until the judicial review before the Kansas Court of Appeals was complete. That's part of the state remedies. What did you say? Excuse me? What authority do you have for that? I'm sorry, that's the Horton case, Your Honor, that I just quoted. The process the state provides also includes the remedial process state courts would provide if asked. That's 202 Federal Code at 1300. So, but what did you want? What did you want? What did you want on the second go-around in the state district court? What did you want the court to give you? The charter? The opportunity to have a banking charter? The second go-around in state court, Your Honor, we wanted the commissioner's decision to be revoked in full because we believe the bank was not solvent when it was not solvent. And at that point, what, remedy? Since you brought up remedy? The money's gone. Mm-hmm. Probably the building is, too, for that matter. Yeah, well, that's really one of the... But is it the banking charter? Is that what we're fighting over here? Yes, that's something that under this court's prior decision, the prior appeal, that that's something that can still be returned to us. And couldn't the state district court on the second go-around have determined that it was not moved? It could have given you that remedy, as could have the Kansas Court of Appeals because they looked, although you say not too well, at due process. But your remedy, this is what you want out of your litigation, is the charter. Yes, Your Honor. If the procedural claim was ripe and if the fair notice provision had been considered, that court would have been able to grant the same remedy. But it would also have been the case in Scroggins, for example, that had those courts actually considered the petitioner's constitutional claims, they could have given that petitioner the relief he sought, too. But this court, nonetheless, held that that petitioner should have another shot at his procedural claims in the Section 1983C. Thank you. Thank you. May it please the court, I'm Dwight Carswell, appearing on behalf of the State Bank Commissioner and Deputy Bank Commissioner. When Columbian filed its second petition for judicial review, it explicitly included an allegation that the Office of the State Bank Commissioner had violated its due process rights by failing to provide an adequate hearing. Although Columbian didn't fully pursue that claim, it was raised and could have been fully addressed by the Kansas courts. Therefore, claim preclusion bars Columbian's attempt to raise that same claim here. It's clear under Kansas claim preclusion principles that it applies to claims that were raised or could have been raised. And here it's both. I mean, it was raised in the petition for judicial review. Now, they didn't specifically address some of the theories before the Kansas Court of Appeals, but they certainly could have. If you're asking about the primary rights arguments. OK. OK. Columbian offers three arguments why it doesn't believe claim preclusion should apply, but none are persuasive. First of all, Columbian says that it couldn't have raised its due process claims in state court because those claims were not right. That ignores not only the fact that they did, in fact, include it in their petition for judicial review, but also that there was the first petition for judicial review where they raised a due process claim, litigated it, and obtained relief. So it's clear that Kansas courts in the judicial review action could have provided relief if there was a due process violation. If they were still unsatisfied with the process that the state commissioner provided in their second judicial review petition, they could have challenged that. And they raised some claims, but they didn't raise all the aspects of that claim they're attempting to do now. Your co-adversary keys in on are Scroggins and Court. Why don't you talk for a moment in order of what is your strongest argument that those cases don't apply? Sure. Starting with Scroggins, I think the strongest argument as I read that case, one of the main concerns, at least with the judicial review portion, which is what we're addressing here, was that judicial review there was under an arbitrary and capricious standard. And the court said, we just can't give preclusion to that because all that requires is that a reasonable person could have decided either way. That's not true here. Under the Kansas Judicial Review Act, a due process claim that's a constitutional claim is reviewed de novo. There would have been no deference to the agency on that question. So Scroggins, and there are some other minor differences that we mentioned, but I think that's the key difference between this case and Scroggins. Horton. I'm sorry? And now Horton. Oh, sure. McKinney and Horton, I think, go together. Horton is interpreting McKinney. And I think those cases actually support the bank commissioner. They didn't find that the claims were unripe. In fact, the opposite. Horton explicitly said that this isn't a matter of ripeness or exhaustion. It goes to the merits. And McKinney, what happened there was there was a hearing. Then there was an allegation that the hearing officer was biased. And the 11th Circuit there said, well, you could have raised that claim in state court and obtained relief. Therefore, your procedural due process claim doesn't have any merit. But that's exactly what's true here. Columbian could have raised its procedural due process claim if it had any problem with the OSBC proceeding in state court. The fact that it didn't, maybe that goes to the merits. But it's certainly not a ripeness concern, as they argue. Columbian's second attempt to get around claim preclusion is arguing that this is a different claim because it involves a different primary right or primary wrong. That's a new claim that's raised for the first time on appeal. The words primary right and primary wrong don't appear anywhere in their briefing below. So it's not properly before this court. Even if it were, the primary rights test is not what applies. It's a matter of Kansas law. The Kansas Supreme Court hasn't explicitly addressed this. So you have to read into what they've done to try to determine how they decide that. Columbian relies on the Wells decision from about 50 years ago, where all the court there said was we're given tests for determining claims in Amjur. And then it cites a bunch of tests, one of which is primary rights, primary wrongs. But then when the Kansas, that's the only time those words appears in that block quote. The Kansas Supreme Court, in applying that, doesn't use those terms again, and never has in the 50 years since. Instead, in more recent decisions, talking about the transactional approach under federal law, this is written in Stanfield. The Kansas Supreme Court said the difference between state and federal preclusion law, Kansas and federal preclusion law, is nearly academic. There's no significant difference. So it seems most likely that the Kansas Supreme Court would follow the transactional approach. And here we're dealing with the same transaction. It's a challenge to the administrative proceedings. But the threshold point is that they didn't raise it below. They didn't raise it below, so there's no need to get into that. But if, for some reason, this court were to get around that somehow, we think on the merits that claim also fails. The third way they try to get around it, I've already addressed, is Scroggins. I think, besides the fact that their main concern, I think Scroggins is inapplicable, because this is de novo review. But they also try to criticize some of the Kansas Court of Appeals discussion. But part of the problem there is they didn't fully raise their due process claim before the Kansas Court of Appeals. They raised the fair notice claim, but some of the arguments they're making now, such as their inability to depose the former bank commissioner and alleged bias, those things weren't specifically addressed. So, of course, the Kansas Court of Appeals didn't address those. But I thought their argument went towards a unique notice of the fair notice argument that they're making, at least as they claim it's a unique one, because it involved a different conception of what notice would be. And therefore, that was not addressed by the Kansas Court of Appeals. And their admission of some discussion of that suggested they didn't actually have a full and fair opportunity to be heard. That's what I understood their argument to be. I'm not sure I fully followed their argument, but I think it's partly. The Kansas Court of Appeals certainly addressed their fault of fair notice argument. It didn't address some other concerns they're trying to raise now about the inability to depose the former bank commissioner or the alleged bias or whatever. But that's because they didn't address those claims in their briefing. But they had the full opportunity to do so. They could have. So claim preclusion applies. They're not even. I mean, they're both due process claims. It's just different theories about why they were denied due process. And as the first judicial review action shows, the state courts were fully capable of providing relief if there was a due process violation. There's no reason to think otherwise. Unless there are any further questions, I think that concludes my argument. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.